2009 OK 82

**Jerry SMITH, Plaintiff/Appellant,**

v.

**PIONEER MASONRY, INC,**
**Defendant/Appellee.**

No. 105,285.

Supreme Court of Oklahoma.

Nov. 10, 2009.

Henry Dalton, Oklahoma City, OK, for Plaintiff/Appellant.

Paul A. Ross, James R. Webb, McAfee & Taft, Oklahoma City, OK, for Defendant/Appellee.

688

REIF, J.

¶1 The issue presented on certiorari review is whether an employer with less than fifteen employees can incur *Burk* tort liability for wrongful termination of an employee based on racial discrimination prohibited by the Oklahoma Anti–Discrimination Act.[1] This issue arose because the trial court dismissed a wrongful termination claim by Jerry Smith against Pioneer Masonry, Inc. Mr. Smith alleged that as a black male, he "was subjected to racially motivated harassment by his employer [that] included 'racial Tuesday' when anyone could use any form of racial slurs toward [him]." Mr. Smith stated that with the management's knowledge, he was constantly subjected to various forms of verbal harassment in the form of racial comments and jokes. After repeated complaints to Pioneer Masonry's owner about this racially motivated harassment, Mr. Smith contended he "was constructively discharged from employment . . . because of the Defendant's continued harassment and racially discriminatory conduct and its' [sic] failure to remedy and stop such harassment and conduct."

¶2 The trial court ruled that the public policy embodied in the Oklahoma Anti–Discrimination Act does not apply to employers, like Pioneer, that have less than fifteen employees.[2] The Court of Civil Appeals affirmed the dismissal by a 2–1 vote. Both the trial court and Court of Civil Appeals' majority believe that this result was mandated by *Brown v. Ford*, 1995 OK 101, 905 P.2d 223. Upon certiorari review, we hold the public policy embodied in the Act can be the basis of a wrongful termination claim regardless of the number of employees.

¶3 In *Brown*, this Court did find the public policy protection embodied in the Oklahoma Anti–Discrimination Act to be tied to the number of employees. This Court held that "Brown's common law claim would not

be actionable as a discharge in breach of public policy [embodied in the Act] because her employer, who engaged *fewer than fifteen employees*, is outside the Act's purview." *Brown*, 1995 OK 101, ¶10, 905 P.2d at 229.

¶4 However, the *Brown* case concerned a discrimination claim based on workplace sexual harassment that involved offensive touching. The Court in *Brown* avoided considering a public policy basis to remedy this wrong because it found a remedy was afforded by the existing common law remedy for assault and battery. *Id.* at ¶11, 905 P.2d at 229–30.

¶5 With regard to public policy, *Brown* actually falls in the line of cases that place discriminatory acts outside the scope of the public policy *Burk* tort where the victim has another adequate remedy. *See Clinton v. State ex rel. Logan County Election Bd.*, 2001 OK 52, [Opala, J., ¶¶6–7], 29 P.3d 543, 548 (Opala, J., concurring in result but not in the text of the Court's pronouncement). This Court has since abandoned the adequacy of the remedies test in cases of wrongful termination involving status based discrimination, *i.e.*, race, color, religion, sex, national origin, age, and handicap. *Shephard v. CompSource Oklahoma*, 2009 OK 25, ¶11, 209 P.3d 288, 292–93.

¶6 On the issue of public policy, *Brown* is also inconsistent with the teachings of *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, 833 P.2d 1218. The *Tate* opinion answered a question that was certified by a federal district court concerning the scope of a *Burk* tort grounded on racial discrimination. *Tate*, 1992 OK 72, ¶1, 833 P.2d at 1220. This Court found the record in support of the federal court's question to implicitly ask: "Are state-law remedies prescribed by Oklahoma's anti-discrimination statute, 25 O.S.1981 §§ 1101 et seq. [the Act], exclusive for vindication of a racially motivated wrongful or retaliatory

1. *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24.

2. The trial court dismissed this case for failure to state a claim upon which relief could be granted. In reaching this conclusion, the trial court considered evidentiary materials showing Pioneer did not have fifteen employees during the time of Mr. Smith's employment. The dismissal was, in

effect, a summary judgment. 12 O.S.2001 § 2012(B). On certiorari review, both Mr. Smith's allegations and the uncontroverted evidentiary materials are taken as true for this Court's de novo determination of whether the petition is legally sufficient. *Indiana Nat'l Bank v. State Dept. of Human Services*, 1994 OK 98, 880 P.2d 371.

discharge?" *Id.* at ¶ 2, 833 P.2d at 1220 (footnotes omitted).

¶ 7 This Court answered this question in the negative, stating "[the Act] neither explicitly nor implicitly provides an exclusive remedy for employment-related discrimination." *Id.* The Court concluded the Act provided *"cumulative"* remedies. *Id.* at ¶ 11, 833 P.2d at 1226.

¶ 8 After discussing the development of the public-policy tort exception to the termination at-will doctrine, the *Tate* Court turned its attention to deciding "whether *racially discriminatory* conduct that leads to *retaliatory* discharge ... is actionable under this exception." *Id.* at ¶ 9, 833 P.2d at 1225. In answering this question, the Court found the Act's declaration of public policy prohibiting discrimination had broader protection than the remedies provided by the Act. The Court observed, "[r]egulation of discrimination lies in *many* legal domains." *Id.* at ¶ 17, 833 P.2d at 1229. The Court ruled the *Burk* tort also provided protection of the Act's public policy prohibiting discrimination.

¶ 9 The Court ultimately concluded the Oklahoma Anti–Discrimination Act posed "no obstacle [in] applying *Burk's* common-law tort to a racially motivated wrongful or retaliatory discharge." *Id.* at ¶ 19, 833 P.2d at 1230 (footnote omitted). The Court held "the employee who brings a common-law tort action for damages occasioned by either a racially motivated discharge or by one in retaliation for bringing a racial discrimination complaint *states a state law claim for tortious employment termination under Burk.*" *Id.*

¶ 10 The Court explained that it was necessary to treat the *Burk* tort as cumulative to the remedies in the Act, because the Act did not afford a private right of action to *all* victims of discrimination. *Id.* at ¶ 18, 833 P.2d at 1229. The Court said such *"a dichotomous division of discrimination remedies* [is] contrary to Art. 5 § 46 of the Oklahoma Constitution." The Court observed: "For remedial purpose[s], discrimination victims comprise a single class" and, therefore, the private right of action must be available to all members of this class to avoid constitutional infirmity. *Id.*

¶ 11 Recently, this Court has reaffirmed the principles from *Tate* that victims of employment discrimination comprise a single class and the *Burk* tort is available to all members of this class. *Shirazi v. Childtime Learning Center, Inc.,* 2009 OK 13, 204 P.3d 75; *Kruchowski v. The Weyerhaeuser Company,* 2008 OK 105, 202 P.3d 144; and *Saint v. Data Exchange, Inc.,* 2006 OK 59, 145 P.3d 1037. Even though a victim of discrimination who works for an employer with less that fifteen employees may be excluded from statutory remedies as recognized in *Brown,* this victim is nonetheless a member of the general class of employment discrimination victims who enjoy the cumulative, independent remedy of a *Burk* tort.

▮ ¶ 12 In conclusion, we hold that one of the primary purposes of Oklahoma's Anti–Discrimination Act is to prohibit racial discrimination in employment and to make such discrimination a legal wrong. This purpose constitutes a general declaration of public policy on this subject. To vindicate violations of this policy, the Act provides statutory remedies in cases where employers have more than fifteen employees, while the common law provides a *Burk* tort to all victims of racial discrimination regardless of the number of employees. The only limitation on pursuit of a *Burk* claim in conjunction with other remedies is that the plaintiff cannot receive a double recovery.

¶ 13 In view of this holding, *Brown v. Ford* is overruled to the extent it holds the public policy embodied in the Oklahoma Anti–Discrimination Act can only serve as the basis for a *Burk* tort pursued by an employee whose employer meets the fifteen employee threshold. In reaching this conclusion, we do not disturb *Brown's* holding that the Legislature may validly excuse "small shops" from *statutory* remedies. However, this exclusion does not affect the right of employees in "small shops" to pursue the common law remedy of a *Burk* tort for the discharge based on prohibited discrimination.

¶ 14 The trial court erred in dismissing Mr. Smith's suit for failure to state a claim upon which relief can be granted. The trial

court's dismissal is reversed and this case is remanded for further proceedings.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; THE DISMISSAL IS REVERSED AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS.**

¶15 EDMONDSON, C.J., TAYLOR, V.C.J., KAUGER, WATT, COLBERT, and REIF, JJ., concur.

¶16 HARGRAVE, OPALA, and WINCHESTER, JJ., concur in part; dissent in part.

OPALA, J., with whom HARGRAVE and WINCHESTER, JJ., join, dissenting in part

¶1 This dissent is solely from **today's overruling of** *Brown v. Ford*[1] insofar as that case requires that in actionable state-law employment discrimination claims (both common-law and statutorily-based) the defendant's minimum number of employees must be no less than fifteen. **The court overlooks that the minimum-number-of-employees requirement does not apply to the case at hand because this discrimination claim is bottomed not on state law but on federal constitutional law.** Vindication of right to freedom from racial discrimination cannot be made dependent on the number of employees. I recede from the court's mistaken view because (1) the wide sweep of today's overruling **needlessly covers** all claims against employers instead of only those that stand upon federal constitutional underpinnings

and (2) *sans* any legal warrant, today's reach of overruling **operates to repeal** a solemn legislative act when its application is confined to claims based solely on Oklahoma common and statutory law.

## I

**THE COURT GRATUITOUSLY AND NEEDLESSLY OVERRULES *BROWN* ON A POINT THAT DOES NOT EVEN APPLY TO THE CASE AT HAND**

¶2 At-will employees who bring a lawsuit for wrongful discharge **based on the state statutory or common law must show** that the defendant-employer falls within the purview of the invoked liability by having the requisite number of employees.[2] When like claims **rely primarily on federal law, constitutional or statutory,** the employee-claimant stands relieved of the minimum-employee requirement. This is so because that provision of state statutory law may not be extended to suits based on federal law.[3] The state's minimum-employee requirement of actionability, if extended to claims predicated on federal constitutional protection, would unduly, and *sans* any legal warrant, restrict the operation of a federal fundamental-law shield in a manner contrary to the U.S. Constitution.

¶3 *Tate v. Browning–Ferris, Inc.*[4] **provided a federal constitutional law basis for a racially motivated wrongful termination claim.** Constitutional claims of that variety

1. 1995 OK 101, 905 P.2d 223. In *Brown v. Ford* the court held that only those employers who have fifteen or more employees are subject to Oklahoma's anti-discrimination act, 25 O.S.2001 § 1101 *et seq.*, which makes actionable certain offending sexual conduct in the workplace. Brown's employer was not subject to liability under the act because it had fewer than fifteen employees.

2. The legislative exclusion of employers engaging less than fifteen persons from liability under the administrative remedy created by 25 O.S.2001 § 1101 et seq. makes that statutory regime unavailable against small shops' employees. 25 O.S.2001 § 1301(1).

3. *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶19, 833 P.2d 1218. For an in-depth explanation of

the distinction between federal-law and statutory-law claims see *Clinton v. State ex rel. Logan County Election Bd.*, 2001 OK 52, ¶6, 29 P.3d 543, 548 (Opala, J., concurring in the result but not in the text of the court's pronouncement).

4. *Supra* note 3. "The breach of public policy for which *Tate* allowed a *Burk* action was rested on a violation of: (1) the Oklahoma Anti–Discrimination Act (AODA) and of (2) the **extant U.S. Supreme Court's XIVth Amendment jurisprudence.** The latter legal source, part of this Nation's fundamental law since 1868, has served as a basis for articulated national public policy for all the States." *Clinton v. State ex rel. Logan County Election Bd., supra* note 3, at ¶6, 29 P.3d at 548 (Opala, J., concurring in the result but not in the text of the court's pronouncement-emphasis added, footnotes omitted).

must stand free of state-law ballast. We hence cannot burden this claim's federal-law predicate by a state-imposed statutory minimum-employee requirement.[5]

¶ 4 The case at hand is unmistakenly like that in *Tate*.[6] The man who claims discrimination is an African American. *Tate* teaches that the 14th Amendment, when offended against, will stand as a predicate for a state claim based on a racially motivated wrongful or retaliatory discharge.[7] In this context the 14th Amendment must be regarded as also a part of Oklahoma's own law.[8] The breach of public policy for which *Tate* allowed a *Burk* action rests on state statutory law[9] applied in conjunction with federal constitutional law.[10] We found from these two sources a command for equal on-the-job treatment for persons of African descent.

¶ 5 In *Brown v. Ford* the employee's state-law sexual harassment claim did not fall within the state statutory criteria of actionability since plaintiff's workplace had less than fifteen employees. She was hence unshielded by any legislatively articulated public-policy protection. Because the main predicate for the lawsuit at hand is drawn from the 14th Amendment,[11] it is impermissible to conclude that *Brown* would apply and should hence be swept aside by today's utterly unwarranted across-the-board judicial annihilation of the statute's minimum-employee requirement.

¶ 6 Claims for employment discrimination based on common and statutory law rather than on federal protections **must conform to the requirements of Oklahoma's anti-discrimination act. That act applies solely to employers with more than fifteen employees.** On the other hand, those discrimination claims that are rested, in whole or in part, upon a federal constitutional foundation need not be subjected to the requirements of Oklahoma's minimum-employee limit. **In short, *Brown v. Ford* need not be overruled in any of its parts by today's pronouncement.** This is so because in the case at hand the primary legal predicate for the claim is the 14th Amendment's protection of racial equality. **Today's gratuitous and needless overruling of *Brown* releases, *sans* any legal warrant, from compliance with statutory state law a category of claims which stands governed entirely by state law, written or unwritten.**

¶ 7 I would hold this claim to be exempt from compliance with the minimum-number-of-employee requirement and would not overrule *Brown v. Ford* because that pronouncement is not even applicable to today's quest for relief from racial discrimination.

5. *Clinton v. State ex rel. Logan County Election Bd., supra* note 3, at ¶ 6, 29 P.3d at 548 (Opala, J., concurring in the result but not in the text of the court's pronouncement)

6. In *Tate, supra* note 3, a discharged African-American employee sued a former employer for employment-related discrimination and retaliatory discharge.

7. In *Tate, supra* note 3, the court held that where an employer discharges an employee in violation of a public policy that is clearly articulated in constitutional, statutory, or decisional law, the employer may be held liable for a tortious breach of a contractual obligation. 833 P.2d at 1225.

8. See *infra* note 11.

9. Oklahoma's anti-discrimination act, 25 O.S. 2001 § 1101 *et seq.*

10. A *Burk* claim must be anchored in some statutory or constitutional expression of Oklahoma's own public policy. *Tate* teaches that an "employee who brings a common-law tort action for damages occasioned by either a racially motivated discharge or by one in retaliation for bringing a racial discrimination complaint states a state-law claim for tortious employment termination under Burk." *Tate, supra* note 3, 833 P.2d at 1231; *Clinton v. State ex rel. Logan County Election Bd., supra* note 3, at ¶ 6, 29 P.3d at 548 (Opala, J., concurring in the result but not in the text of the court's pronouncement).

11. The Equal Protection Clause of the 14th Amend., § 1, U.S. Const., commands that no State shall deny due process of the law or "deny to any person within its jurisdiction the equal protection of the laws." Oklahoma's due process clause, Art. 2, § 7, Okl. Const., has a definitional sweep that is coextensive with its federal counterpart. *Black v. Ball Janitorial Serv., Inc.,* 1986 OK 75, 730 P.2d 510, 513.