2008 OK CIV APP 95

**Titus EAPEN, Plaintiff/Appellant,**

v.

**Dallas McMILLAN, Defendant/Appellee.**

No. 105324.

Court of Civil Appeals of Oklahoma,
Division No. 1.

Sept. 12, 2008.

Mark Hammons, Amber L. Hurst, Oklahoma City, OK, for Appellant,

Sam R. Fulkerson, Oklahoma City, OK, for Appellee.

LARRY JOPLIN, Judge.

¶1 Appellant, Titus Eapen, filed a petition alleging race and national origin discrimination under a public policy tort theory against Appellee, Dallas McMillan, in violation of 25 O.S.2001 §§ 1101, et seq., a *Burk*-tort, *and* a claim for tortious interference. McMillan filed a motion to dismiss, which the trial

court granted with prejudice and without leave to amend.[1] Eapen seeks review of the trial court's order which granted McMillan's motion to dismiss.

¶2 Eapen filed a petition against McMillan, claiming race and national origin discrimination, hostile work environment, disparate treatment and wrongful termination. McMillan was Eapen's supervisor at Dell Marketing L.P. (Dell). Eapen's allegations included various things, such as racial slurs and discriminatory references to Eapen's East Indian decent, lesser transfer bonus, interference with receiving promotions, and ultimately termination for complaining of the discriminatory manner in which he was treated. Eapen also filed a claim against Dell in federal court, alleging essentially the same facts.

¶3 McMillan filed a motion to dismiss. He first asserted the district court did not have jurisdiction over the public policy tort, because Eapen failed to exhaust administrative remedies and was out of time to do so. McMillan asserted he was Eapen's co-worker, not Eapen's employer, and argued only an employer can breach a public policy tort like the one alleged. McMillan also argued Eapen was judicially estopped from asserting inconsistent positions with respect to his relationship to McMillan, namely that McMillan acted within the scope of his position as a manager at Dell for purposes of Eapen's federal case against Dell and then arguing that McMillan was the employer for purposes of his state cause of action. McMillan further claimed an adequate statutory remedy prevented Eapen from also bringing a *Burk*-tort action; and Eapen's tortious interference claim was impermissible, because such a claim arises when a party outside the contract interferes with the contract, and Eapen's *Burk*-tort allegations depend on McMillan's posture as Eapen's employer, which would place McMillan inside the contract relationship and therefore not subject to a tortious interference claim.

¶4 Plaintiff responded, arguing that an opportunity for him to amend can only be denied when it is certain no claim can be

1. *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24.

maintained under the facts alleged. Eapen also maintained exhaustion of administrative remedies was not required and in the event it was required, he exhausted his administrative remedies. Eapen argued that a plaintiff filing suit for discrimination based on a disability may sue an individual acting as an agent of the employer and Oklahoma law requires victims of race and national origin discrimination have the same remedial regime as disability law would provide. Eapen asserted he could maintain a tortious interference cause of action against an agent of the employer if that agent acted in bad faith or attempted to further the agent's own purpose with the discriminatory acts. Finally, Eapen argued judicial estoppel does not preclude use of inconsistent theories of recovery during the initial phases of a proceeding.

■ ¶ 5 The court reviews an order granting a motion to dismiss de novo. *Fanning v. Brown*, 2004 OK 7, 85 P.3d 841, 844. "A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate **beyond any doubt** that the litigant can prove no set of facts which would entitle him to relief." *Frazier v. Bryan Mem. Hosp.*, 1989 OK 73, 13, 775 P.2d 281, 287. (emphasis in original). The appellate court must consider whether a plaintiff's petition is legally sufficient. *Fanning v. Brown*, 2004 OK 7, 85 P.3d 841, 844 (citations omitted).

■ ¶ 6 However, if in a motion to dismiss, parties submit materials outside the pleadings, the motion to dismiss is treated and reviewed as a motion for summary judgment. *Bittle v. Oklahoma City University*, 2000 OK CIV APP 66, 6 P.3d 509, 512. We review the grant of a motion for summary judgment also by a de novo standard. *Id.* at 513. The Court will examine the pleadings and evidentiary materials to determine whether there is substantial controversy as to any material fact. *Id.* If such a controversy exists, then summary judgment is improper. *Id.*

¶ 7 In this case, both parties submitted additional exhibits in the motion to dismiss and the response to the motion to dismiss. Because the parties submitted materials beyond the pleadings, we review this cause under the summary judgment standard.

## Individual Liability for a Public Policy Burk-tort?

■ ¶ 8 McMillan asserts Eapen's public policy *Burk*-tort claim cannot extend to include individual liability under *Burk*. According to McMillan, the public policy tort can only be asserted against the employer, which in this case was Dell.

¶ 9 Eapen argues that Oklahoma's Anti-Discrimination Act expressly provides for individual liability:

"Employer" means a person who has fifteen or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, or a person who as a contractor or subcontractor is furnishing the material or performing work for the state or a governmental entity or agency of the state **and includes an agent of such a person** but does not include an Indian tribe or a bona fide membership club not organized for profit[.]

25 O.S.2001 § 1301(1) (emphasis added). Eapen then bootstrapped the "agent of such a person," language in the Oklahoma Anti-Discrimination Act (OADA) with the Oklahoma Supreme Court's pronouncement in *Saint v. Data Exch., Inc.*, 2006 OK 59, 145 P.3d 1037, for the proposition that all persons covered under the OADA must have uniform remedial measures available to them. Therefore, according to Eapen, race and national origin plaintiffs must be able to sue individuals under the authority provided in the OADA.

■ ¶ 10 Any consideration of the reach of *Burk* must be done with the understanding that *Burk* itself demands the public policy exception be "narrowly circumscribed[.]" *Burk*, 770 P.2d at 29. In the present case, the parties cite and we find no guidance with respect to individual liability and how such liability might correspond to the exception outlined in *Burk*. Application of the *Burk* exception demands violation of "a clear mandate of public policy[,]" otherwise no exception to the employment-at-will doctrine will lie. "When [the Oklahoma Supreme Court] created this unique tort [the court] cautioned

that it applies to only a narrow class of cases and must be tightly circumscribed." *Clinton v. State, ex rel. Logan County Election Bd.,* 2001 OK 52, 29 P.3d 543, 545. The court has repeated this warning often. *Id.*

¶ 11 We glean no "clear mandate" of public policy imposing individual liability for tort discharge under § 1301 and *Saint.* Contrary to Eapen's position, § 1301(1) does not provide the "clear mandate" required to extend *Burk* to the point that a co-worker or supervisor in the workplace would be individually liable for a public policy tort. At present, nothing in *Burk* or its progeny seems to extend the concept of "employer" that far. The trial court's decision dismissing Eapen's *Burk*-tort claim is affirmed.

### Tortious Interference

■ ¶ 12 With respect to Eapen's tortious interference claim, McMillan argues that an employee acting as an agent of the employer cannot be liable for tortious interference with a contract between the employer and a third party. *Martin v. Johnson,* 1998 OK 127, 975 P.2d 889, 896. However, *Martin* outlines a specific exception to this rule:

> If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract. Courts in other jurisdictions agree.

*Id.* at 896–97.

¶ 13 Eapen alleged in his petition that McMillan's actions were "not part of the good faith performance of legitimate business interests, and are not otherwise privileged or justified." A material issue of fact in Eapen's tortious interference claim is whether McMillan acted within the scope of his employment or in bad faith and therefore contra to the interests of Dell when he engaged in the alleged discriminatory acts. While the factual record is not particularly well developed, it is clear Eapen asserts in his state court claim that McMillan's alleged racial slurs and discriminatory behavior toward Eapen were done in bad faith.

¶ 14 McMillan addressed the tortious interference claim in his motion to dismiss claiming, as a matter of law, Eapen could not maintain the cause of action for tortious interference, because McMillan was either the employer as Eapen alleged and an employer cannot be liable under such a theory; or McMillan was acting in his representative capacity for Dell as alleged in the federal suit. McMillan said Eapen should be judicially estopped from pleading facts contrary to the position he took in his federal court proceeding, namely that Dell was the employer.

■ ¶ 15 In reviewing a summary judgment, the appellate court has an affirmative duty to test the legal sufficiency of all evidentiary material submitted and must view the facts and inferences in the light most favorable to the non-movant, Eapen. *Glasco v. State, ex rel. Oklahoma Dept. Corr.,* 2008 OK 65, 188 P.3d 177. In viewing the facts and inferences in the light most favorable to Eapen, the summary judgment for McMillan cannot stand. The exception articulated in *Martin* means that an employee acting in bad faith is not necessarily exempt from a tort claim for interference with a contract. Given the facts alleged by Eapen and the exception in *Martin,* there is a legal basis for Eapen's tortious interference claim and alleged facts and inferences, which when viewed in the light most favorable to Eapen, preclude summary judgment on this issue. The summary judgment granted for McMillan on the issue of tortious interference is reversed and remanded.

■ ¶ 16 McMillan argues Eapen is judicially estopped from claiming inconsistent positions. Eapen claims McMillan was within the scope of his employment for purposes of his federal case against Dell and then claims McMillan acted in bad faith for purposes of his state tortious interference claim against McMillan individually. A determination that McMillan acted in bad faith and outside the scope of his employment may well impact Eapen's claims against Dell, but Eapen is not precluded at the pleading stage from assert-

ing the inconsistent positions. *Indiana Nat'l Bank v. State Dept. of Human Serv.,* 1994 OK 98, 880 P.2d 371, 375.

¶17 The trial court's order granting summary judgment in favor of McMillan is AFFIRMED with respect to Eapen's *Burk*-tort claim and REVERSED with respect to Eapen's tortious interference claim. AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.

ADAMS, P.J., and HANSEN, J., concur.