DOUG GABBARD II, Presiding Judge.
 

 {1 Plaintiff, Debbie Wheat, appeals the trial court's dismissal of her age discrimination lawsuit against Defendant, State of Oklahoma ex rel. Tulsa County District Attorney (State). We reverse and remand for further proceedings.
 

 FACTS
 

 T2 Wheat was employed by the Tulsa County District Attorney's office (TCDA), a state agency. TCDA terminated her employment on May 14, 2003. Wheat asserted she was first told her services were no longer needed, and was later told she was being let go because of budget cuts.
 

 ¶3 Wheat asserted she had been replaced "by a less qualified younger male," and attempted to pursue a tort claim for age discrimination under the Oklahoma Governmental Tort Claims Act (GTCA). Her attorney mistakenly sent notice of her claim to Tulsa County rather than to State as required by the GTCA. Notice was received by a TCDA assistant district attorney, because TCDA was responsible for giving legal advice to Tulsa County.
 

 T4 Wheat later sued TCDA for age discrimination, initially under federal and state anti-diserimination statutes. Later, she asserted her claim was a common law public policy tort based on Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24.
 
 [1]
 
 State filed a motion for summary judgment, based on Wheat's failure to give proper notice. The trial court granted the motion, and Wheat appealed.
 

 T5 In 2007, another division of this Court reversed and remanded. In Appeal No. 108,-599,
 
 [2]
 
 COCA Division II held that the notice given to the TCDA assistant district attorney amounted to actual notice to State and substantially complied with the GTCA.
 

 
 *1148
 
 T6 On remand, Wheat filed an amended petition, asserting two claims: "unlawful termination in violation of Oklahoma public policy," referring to 25 0.8.2001 § 1302
 
 [3]
 
 of Oklahoma's anti-discrimination statutes, 25 0.9$.2001 & Supp.2009 §§ 1101 through 1901, and "unlawful termination in violation of Oklahoma public policy and the policies and procedures for state employees," referring to the State Government Reduction-In-Force and Severance Benefits Act, 74 0.8.2001 & Supp.2009 §§ 840-2.27A, et seq. (RIF Act), which is part of the Oklahoma Personnel Act (OPA), 74 0.8$.2001 & Supp.2009 §§ 840-1.1 et seq.
 
 [4]
 

 T7 State filed a motion to dismiss, asserting Wheat had failed to state a cognizable Burk claim because (1) she was not an at-will employee; and (2) she had the same, adequate statutory remedy as the entire class of victims of discrimination in state employment. Both parties filed numerous briefs, focusing on the effect of recent Supreme Court decisions dealing with the requirements of Burk.
 

 T8 The trial court granted State's motion to dismiss. While the court disagreed with State's argument that Wheat was not an at-will employee, it found that the OPA created a "class of State employees that is distinct from the broader class of all Oklahoma employees" and that this class had "the same remedies under the OPA for alleged violations of the State RIF Act and for alleged discrimination in State employment on the basis of race, color, religion, sex, national origin, age, and handicap." Therefore, the court concluded, because Wheat had access to the same remedies as other victims of alleged RIF Act violations and State employment discrimination, she failed to state a legally cognizable Burk tort claim.
 

 T 9 Wheat appeals.
 

 STANDARD OF REVIEW
 

 T10 Motions to dismiss should not be granted "for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove mo set of facts which would entitle him to relief." Frazier v. Bryan Mem. Hosp. Auth., 1989 OK 73, ¶13, 775 P.2d 281, 287 (emphasis in original; footnote omitted).
 

 ANALYSIS
 

 111 In general, "[a] viable Burk claim must allege (1) an actual or constructive discharge (2) of an at-will employee (8) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or deci-sional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma, and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal."
 
 [5]
 
 Vasek v. Bd. of County Comm'rs, 2008 OK 835, ¶14, 186 P.3d 928, 932. In such cases, the employer commits "a tortious breach of contractual obligations, compensable in damages." Tate v. Browning-Ferris, Inc., 1992 OK 72, ¶ 9, 833 P.2d 1218, 1225 (emphasis and footnote omitted).
 

 1. The "at-will" requirement
 

 112 The trial court correctly concluded that Wheat met the requirement of being an at-will employee. "At-will employment means the master may hire or discharge at will and the servant may work or refuse to work at will. The at-will employment doctrine applies to employment con
 
 *1149
 
 tracts that have no definite duration and recognizes that either the master or servant may end the employment at will." Glasco v. State ex rel. Okla. Dep't of Corr., 2008 OK 65, n. 9, 188 P.3d 177. Simply put, Oklahoma "defines an employee-at-will as one who is hired for a period of indefinite duration." Dizon v. Bhuiyan, 2000 OK 56, ¶ 8, 10 P.3d 888, 891 (emphasis in the original; footnote omitted).
 

 113 Wheat's status fits the standard definition of an at-will employee. She did not agree to a contract or otherwise obligate herself to work for a certain period of time. Also, her employer, TCDA, did not obligate itself to employ her for a definite duration. Wheat's employment status is clearly different than that of the plaintiff in Dixon, who was hired one semester at a time, and, thus, was not an at-will employee.
 
 [6]
 
 Wheat was clearly hired for an indefinite period, and was an at-will employee.
 

 {14 However, in the trial court, State asserted that the RIF Act guarantees employees like Wheat "a minimum period of fixed employment of at least 60 days in duration by requiring the employer to provide at least 60 days advance notice of a discharge due to a reduction in force." Therefore, State concluded that Wheat "could not as a matter of law be terminated at any time at the will of TCDA," and was not an at-will employee. State argued that an at-will employee should be defined as one with respect to whom an employer enjoys "an unfettered right ... to discharge ... without notice ... without incurring liability," and because TCDA had to give notice, Wheat was not at-will.
 
 [7]
 

 115 We disagree. Oklahoma law focuses on whether an employee is hired for an indefinite period, not whether the employee has to be given advance notice of termination. Here, while the RIF Act required 60 days' notice of termination, it did not limit TCDA's right to terminate Wheat at any time. Wheat's employment had no definite duration, and there is no indication the statute intended to alter the at-will status of the employees covered by it.
 

 1 16 Alternatively, State relied on the often repeated language in Burk that, in an at-will relationship, an employer may discharge an employee for good cause, no cause, or even morally wrong cause. 1989 OK 22 at 15, 770 P.2d at 26. State argued that because a section of the OPA, 74 O.S.2001 § 840-2.9, forbids firing a State employee for certain discriminatory reasons, Wheat cannot be discharged for any reason, and, thus, is not an at-will employee.
 

 117 The fact that Oklahoma law gives every employee, whether in government or the private sector, basic anti-discrimination rights does not change the at-will doctrine. Burk itself recognizes these rights, and states that they are simply a statutory exception to the at-will doctrine. Id. at 16 and n. 4, 770 P.2d at 26. To hold otherwise would effectively abolish the at-will doctrine in Oklahoma. Thus, the trial court properly concluded that Wheat was an at-will employee for purposes of the first requirement of the Burk test.
 

 2. The "adequate statutory remedy" requirement
 

 $18 The trial court granted State's motion to dismiss based on the argument that Wheat failed to meet the fifth Burk requirement that "no statutory remedy exists that is adequate to protect the Oklahoma policy goal." Vasek v. Bd. of County Comm'rs, 2008 OK 35, ¶ 14, 186 P.3d 928,
 
 *1150
 
 982. This requirement has been the subject of a series of Supreme Court decisions recently summarized in Kruchowski v. Weyerhaeuser Co., 2008 OK 105, 202 P.3d 144.
 

 119 As that case explains, Burk was followed by Tate v. Browning-Ferris, Inc., 1992 OK 72, 833 P.2d 1218, which held that a Burk tort could be asserted for racial discrimination. The Supreme Court in Tate based its decision in part on Art. 5, § 46 of the Oklahoma Constitution, which prohibits local and special laws on certain subjects. As the Court explained, although all victims of discrimination form one class, Oklahoma's anti-discrimination statutes provided a private right of action for discrimination based on handicap, but not for other types of status-based discrimination, such as race. This created an unconstitutional "dichotomous division of discrimination remedies." Tate at ¶18, 833 P.2d at 1230 (emphasis omitted). To eure this constitutional infirmity, the Court held that the remedies under the statutes were not exclusive but "cumulative," and a Burk tort could be asserted for racial discrimination.
 

 1 20 Next came List v. Anchor Paint Manufacturing Co., 1996 OK 1, 910 P.2d 1011, which the Kruchowski Court recognized as a "diverg[ence]" from Tate because it was decided on the basis of whether the plaintiff's remedies were "adequate," rather than on constitutional grounds of equal treatment. Kruchowski at ¶11, 202 P.3d at 149. The List Court declined to extend the Burk tort remedy to a claim involving age discrimination because the plaintiff in that case had adequate statutory remedies. This decision was followed by several others also applying the rule that, where a statutory remedy is adequate for protecting public policy, a common law tort remedy such as that afforded by Burk is not needed. Id. at ¶ 19, 202 P.3d at 150.
 

 1 21 However, in 2006, the Court refocused its analysis on the equality of the remedy, rather than its adequacy. In Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, the Court overruled List, as it subsequently explained in Kruchowski:
 

 [Rlather than discuss the adequacy of the remedies, we spoke [in Saint] in terms of disparate remedies and determined that, as required by the Constitution, the same remedies must be made available for everyone within the class of employment discrimination-handicap, race, sex and age.
 

 Accordingly, pursuant to Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, and in order to provide clarity to the bench and bar, we hold that a plaintiff may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not uniform and evenbhanded-regardless of whether the remedies originate under Federal or State law. It is only when the available remedy to the victim is not commensurate with that which is provided for like or similar discrimination to vindicate an on-the-job tort that we will craft an appropriate common law remedy.
 

 Id. at ¶¶ 30-31, 202 P.3d at 153. The Court also stated, "[The plaintiff must make a showing that a breach of Oklahoma's public policy occurred for which (a) there is no available statutory-crafted remedy or (b) the available statutory remedy is not commensurate with that which is provided for similar work-related discrimination." Id. at 137, 202 at 154 (emphasis added.) Id. at 137. The Kruchowski Court concluded that, because the remedies are not the same for everyone in the class, "there is a Burk tort remedy for those who allege employment age discrimination." Id. at T 35.
 

 1 22 Recently, the Court has expressed its position more explicitly, acknowledging that it has "clearly abandon[ed] the adequacy of remedies test in cases of wrongful termination involving status based discrimination," i.e., "race, color, religion, sex, national origin, age, and handicap." Shephard v. CompSource Oklahoma, 2009 OK 25, ¶ 11, 209 P.3d 288, 293 (emphasis added). As noted above, the Court has replaced that test with a "commensurate remedy rule," requiring that in cases of status based discrimination all vie-tims of handicap, race, gender, religion, national origin, and age discrimination receive similar remedies. Id. at ¶ 10, 209 P.3d at 292. The adequacy of remedies test only remains alive for cases where a plaintiffs
 
 *1151
 
 conduct (such as whistleblowing) is alleged to have triggered the discharge. Id.
 

 {23 Although the Supreme Court has not yet applied Kruchowski in an at-will government employee case, the constitutional basis of the Court's decision in Kruchowski compels that result in the case at bar. Therefore, Wheat is not barred from bringing a Burk claim, even though she is a member of a legislatively created class of employees (made up of state government employees) distinct from the broader class of all Oklahoma employees.
 

 24 It is true that for some purposes, the state can create a separate class composed of its employees and still pass constitutional muster. For example, in Glasco v. State ex rel. Oklahoma Department of Corrections, 2008 OK 65, 188 P.3d 177, the Court upheld a statute permitting the state to discharge employees who had been on leave without pay for a year even though the plaintiff asserted the statute targeted state employees for different treatment than other injured workers. In the instant case, however, there is no legitimate reason for denying state employees the same basic anti-discrimination rights as other employees. Although State may terminate employees pursuant to the RIF Act, it may not select which employees to terminate on the basis of age or any other basis prohibited by the anti-discrimination statutes. Thus, for comparative purposes, the relevant class here must be composed of all victims of employment discrimination.
 

 { 25 Any doubts about this conclusion were recently resolved in Smith v. Pioneer Masonry, Inc., 2009 OK 82, 226 P.3d 687. In that case, the Court held that "victims of employment discrimination form a single class and the Burk tort is available to all members of this class." Id. at 111, 226 P.3d at 689. Smith held that a victim of racial discrimination could pursue a Burk tort under the public policy expressed in Oklahoma anti-discrimination law, even though the law explicitly excluded his employer because it employed less than 15 workers. The Court in Smith stated that the statutory and common law remedies exist to vindicate violations of the anti-discrimination statutes as to all vietims of racial discrimination.
 

 CONCLUSION
 

 126 In summary, State employees who allege age discrimination are part of a larger, single class composed of all victims of employment discrimination; and, because the remedies for the different forms of discrimination are disparate, "there is a Burk tort remedy for those who allege employment age discrimination." Kruchowski at ¶ 35, 202 P.3d at 154. For these reasons, Wheat is entitled to pursue her claim. The trial court's dismissal order is hereby reversed and this matter is remanded for further proceedings.
 

 T27 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 GOODMAN, J., and FISCHER, J. (sitting by designation), concur.
 

 [1]
 

 . Burk is the landmark Oklahoma Supreme Court decision that carved out an exception to the employee at-will doctrine for instances of employee terminations that are contrary to a clear mandate of public policy. A Burk claim can be brought against the State, because the GTCA does not provide immunity to the State from common law tort liability for wrongful discharge under Burk. Gunn v. Consol. Rural Water and Sewer Dist. No. 1, 1992 OK 131, ¶ 12, 839 P.2d 1345, 1351.
 

 [2]
 

 . Mandate issued September 28, 2007.
 

 [3]
 

 . Section 1302 states it shall be a discriminatory practice for an employer "[tlo fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges, or responsibilities of employment, because of race, color, religion, sex, national origin, age, or handicap...."
 

 [4]
 

 . At the time of Wheat's termination, § $40-2.27C(A) required the appointing authority to provide a plan for any reduction-in-force at least 60 days before the reductions began, and § $40-2.27B(2) defined "[alffected employees" as "classified and unclassified employees in affected positions." These statutes have since been amended. Wheat claimed that TCDA discharged her without giving her 60 days advance notice and without paying severance benefits, both required by the RIF Act.
 

 [5]
 

 . The latter requirement is different for alleged victims of status-based discrimination, such as Wheat, as discussed in part two of this opinion.
 

 [6]
 

 . We also note that Wheat's employment with TCDA does not fit any of the categories which the current Discussion Draft of the Restatement of Employment Law states are non-at-will employment arrangements: "(a) a collective-bargaining agreement between an employer and an authorized collective-bargaining agent requiring cause for termination; (b) a bilateral agreement between an employer and employee for a definite or indefinite term; (c) a unilateral employer commitment limiting the employer's power to terminate at will; or (d) a limitation on the employer's power to terminate at will required by the implied duty of good faith and fair dealing." Restatement (Third) of Employment Law, § 3.02 (Discussion Draft 2006). The instant case further does not involve the special instances listed in the Restatement's § 3.06 for retaliatory firings or dismissals made to prevent the vesting of a right.
 

 [7]
 

 . Record, Tab #30, Defendant's motion to dismiss at pp. 7-8.